## WESTERFIELD v. RAFFERTY, Collector of Internal Revenue.

(District Court, E. D. New York. January 6, 1925.)

1. **Internal revenue ⬅⬅7—Taxes and interest paid in previous years held not deductible from sale price of property to determine net gain on investment.**

Under Revenue Act 1921, § 213(a), being Comp. St. Ann. Supp. 1923, § 6336⅛ff, defining gross income, and section 214(a) (2, 3), being Comp. St. Ann. Supp. 1923, § 6336⅛g, specifying allowable deductions, where unimproved real estate, bought and held subject to a mortgage, is sold, interest and taxes paid in previous years are not deductible from the sale price in determining the net gain on the investment.

2. **Internal revenue ⬅⬅2—Statute limiting deduction of interest and taxes to those paid within taxable year held constitutional.**

The provision of Revenue Act 1921, § 214 (a) (2, 3), being Comp. St. Ann. Supp. 1923, § 6336⅛g, permitting deduction from gross income of only such interest or taxes as were paid or accrued within the taxable year, held constitutional.

3. **Internal revenue ⬅⬅7—Taxes paid within the year, but accrued in prior years, not deductible.**

The provision of Revenue Act 1921, § 214 (a) (3), being Comp. St. Ann. Supp. 1923, § 6336⅛g, allowing the deduction from gross income of "taxes paid or accrued within the taxable year," does not include taxes paid within the year, but which accrued in prior years.

4. **Internal revenue ⬅⬅7—Taxes and interest paid on property bought not part of "capital investment."**

Taxes, theoretically, at least, are paid for benefits received, and taxes paid on property bought cannot be considered part of the capital investment, in determining whether there was taxable gain in sale of real estate, nor can interest paid to a mortgagee for the use of money, which takes the place of so much of the investor's own capital.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital.]

At Law. Action by Kate L. Westerfield against John T. Rafferty, Collector of Internal Revenue. On motion to dismiss complaint. Motion granted.

George I. Woolley, of Brooklyn, N. Y., for plaintiff.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y. (Nelson T. Hartson, Solicitor of Internal Revenue, and Edward C. Lake, Attorney of Treasury Department, both of Washington, D. C., of counsel), for defendant.

INCH, District Judge. This is a motion to dismiss a complaint, in an action brought

by plaintiff to recover the sum of $170.34, representing an income tax alleged to have been illegally and erroneously collected from, and paid under protest by, plaintiff, during the year 1921, under the provisions of the Revenue Act of 1921 (Comp. St. Ann. Supp. 1923, § 6336⅛a et seq.). The pleadings consist of complaint and answer and all the material facts are admitted. The sole question is one of law.

Briefly stated, it appears that plaintiff on March 15, 1922, filed for the first time a return of her income. This was for the calendar year 1921, as provided by the Revenue Act of 1921. In this return she showed no taxable income for said year. On the contrary, plaintiff claimed therein that she had sustained a loss of $1,322.56 from a sale by her of certain real estate. This return was examined and reaudited by the collector of internal revenue, and this claim of a loss was disallowed, and instead a profit of $4,294.34 was found. The income tax on this income found was $170.34, which sum plaintiff thereafter paid under protest, and duly commenced this suit.

[1, 2] Two main claims are made by plaintiff: First, that there was no gain as contemplated by the Revenue Act of 1921; second, if a proper construction of said act compels the finding that there was a gain, which could be taxed, then such construction makes the sections of the law applicable unconstitutional.

Plaintiff bought the piece of unimproved real estate in Brooklyn on July 19, 1910. She paid therefor $13,800. This purchase price consisted of her assumption of a mortgage already on the property of $10,000, bearing interest at 5 per cent. (which mortgage was still on the property when it was later sold), and $3,800 in cash. Plaintiff continued to own this property, paid the taxes and assessments upon it, and interest on the mortgage, until March 18, 1921, when she sold the property for $22,000. Thus in a period of 11 years the property, as a piece of property, had steadily increased in value in an amount approximately $8,000.

It is conceded, in accordance with the said Revenue Act, that the market value of this real estate on March 1, 1913 was $15,-988.20, so that here also there was an increase in the value of the property, as a piece of property, of some $6,000 over that of this arbitrary date in 1913, and the date of the sale in 1921. Plaintiff, however, contends that this is simply a theoretical gain; that as a matter of fact, and it is so conceded, she had paid out during these 11 years, while she owned the property, the sum of $9,522.56, in so-called "carrying charges," and that therefore, deducting these "carrying charges" of $9,522.56 from the sale price of the property $22,000, we have left a total of $12,477.44; and that, as she bought the property for $13,800, she had sustained an actual loss of $1,322.56.

Bearing the above facts in mind, two things are plain. One is that, from the time the plaintiff bought the property in 1910 to the time that she sold it, the market value had steadily increased, whether the point of departure be July 19, 1910, or March 1, 1913. The other is that, if the Revenue Act of 1921 or the ascertainment as an actual fact of her gross income permitted or required the deduction from the sale price of these so-called "carrying charges," there was no net gain, and hence nothing to tax.

The tax in question is upon net income. It is created by statute, and the statute expressly determines how such net income is arrived at. The sections applicable are:

Section 212. Net Income of Individuals Defined. (a) In the case of an individual, the term "net income" means the gross income as defined in section 213, less the deductions allowed by section 214. (b) The net income shall be computed upon the basis of the taxpayers annual accounting period. * * * If the taxpayer has no annual accounting period, or does not keep books, the net income shall be computed on the basis of the calendar year.

Section 213. Gross Income Defined. "For the purposes of this title (except as otherwise provided in section 233) the term 'gross income' (a) includes gains, profits and income derived * * * from sales or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property. * * * The amount of all such items * * * shall be included in the gross income for the taxable year in which received by the taxpayer. * * *"

The above-mentioned section 233, and the portions omitted from the above quotation of the statute, relate to corporations or to matters not affected by the facts here.

Section 214. Deductions Allowed Individuals. "(a) In computing net income there shall be allowed as deductions: * * * (2) All interest paid or accrued within the taxable year on indebtedness; * * * (3) taxes paid or accrued within the taxable year; * * * (4) losses sustained during the taxable year and not compensated for

by insurance or otherwise, if incurred in trade or business; (5) losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; * * * (6) losses sustained during the taxable year of property not connected with the 'trade or business arising from fires," etc. "Losses allowed under paragraphs (4), (5), (6) of this subdivision shall be deducted as of the taxable year in which sustained unless, in order to clearly reflect the income, the loss should, in the opinion of the Commissioner, be accounted for as of a different period. * * * "

Then follows certain provisions for the deduction of debt, depreciation, and other matters not relevant here. In accordance with the above, the defendant proceeded as follows: It took the conceded value of the property as of March 1, 1913, at $15,957.53, and added thereto an assessment for a local improvement of the value of $30.67, making a total value as of March 1, 1913 of $15,988.20. It then subtracted this sum of $15,988.20 from the sale price of the property $22,000, and thereby reached what it determined to be the gross income of plaintiff, which amounted to $6,011.80. From this gross income the defendant then deducted the following deductions, pursuant to said section 214: Expenses of sale and commissions, $595.50; taxes paid in 1921, $931.33; interest paid in 1921, $190.60— making a total deduction of $1,717.43. This showed a net income for the taxable year of 1921 of $4,294.37, the tax on which was said $170.34.

[3] At the time of sale in 1921 plaintiff paid $221.78, also representing taxes paid. This sum was not allowed to be deducted by defendant. It appeared that this item of taxes accrued and became due in the year 1920, which was not the taxable year of 1921. Thus, while subdivision 3 of the aforesaid section 214 refers to "taxes paid or accrued within the taxable year," nevertheless this would seem not to refer to the payment of arrears of taxes, else by mere allowing taxes to go unpaid, which is permitted for at least three years in this state, and the payment of same in the taxable year, plaintiff would thus be enabled to deduct same in this indirect manner, where she could not do so directly.

The plaintiff, however, claims, as has above been stated, that instead of deducting from the alleged gross income the items above mentioned, occurring in the year 1921 and amounting to $1,717.43, the defendant, in arriving at her gross income, should first have deducted from the sale price all taxes, interest, and assessments, paid during the 11 years, amounting to $9,522.50. Plaintiff states this claim in the following words in her brief (page 8):

"Whatever has to be paid out to hold the property must be added to the cost or deducted from the selling price, to ascertain whether there has been any gain or income at all from the transaction."

However, on the argument, and in a supplemental memorandum filed by plaintiff, this position is somewhat changed:

"This memorandum is submitted to call the court's attention to the misstatements of plaintiff's contentions contained in defendant's reply brief, where it is asserted repeatedly that plaintiff claims that the carrying charges should be added to the cost in order to ascertain whether or not there was any gain or loss from the transaction. On the contrary, plaintiff's claim throughout the case has been that the carrying charges should be deducted from the selling price."

Accordingly plaintiff's contention here is that these taxes and this interest, admittedly paid in years preceding 1921 (the taxable year in question), should first be deducted from the $22,000, as well as the taxes and interests paid in the taxable year 1921, before a gross gain can be ascertained.

The tax, and the method of arriving at it, is purely statutory, and is necessarily rigid. Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. Section 214 expressly limits deductions for (2) interest and (3) taxes to those paid or accrued within the taxable year. Subdivisions 4, 5, 6, refer to losses occurring during the taxable year, or possibly earlier; but whether or not there was a loss in this case is a question to be here determined, while interest and taxes are definite things, which cannot be disputed, and for this reason, after careful consideration, I do not think that I can construe the payment of taxes and interest as such losses; on the contrary, they are, as I have said, definite things, to be deducted or not, according to the plain wording of the statute.

Plaintiff places considerable reliance on the case of Goodrich v. Edwards, 255 U. S. 527, 41 S. Ct. 390, 65 L. Ed. 758. Examination of this case shows that two transactions were involved: One where certain

stock was bought in 1912 for $500, and steadily increased in value, until it was sold four years later for approximately $14,000. There a tax had been assessed on the difference between the value of the stock on March 1, 1913, and the amount for which it was sold, and such tax was affirmed by the Supreme Court. The second transaction is not relevant to the case here, for the facts here are those of the first transaction. In the second transaction, stock was exchanged in 1912, and sold four years afterwards for a loss of $20,000, although on March 1, 1913, if the stock had been sold, a loss would then have been sustained of some $40,000. Thus there was an attempt to tax a loss in either event, and there was never a gain.

Here there was a gain in a sale price of $8,000 over the original purchase date, or $6,000 over the arbitrary date, March 1, 1913. It should be borne in mind that this tax is on "income," which by statute includes "gains," and there is no necessity to unduly lengthen this opinion, by going into the question as to which there are many decisions in our highest court as to the technical meaning of "income."

Suffice it to say that under the present statute "it includes the gain from capital realized by a single isolated sale of property held as an investment, as well as profits realized by sales in a business of buying and selling such property." Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305. It seems to me plain, therefore, that plaintiff's contention that, as a proper statutory method of ascertainment of gross gain, all of her taxes and assessments and interest should be deducted from the selling price, contrary to the express words of the statute, cannot be sustained.

[4] We pass, now, to the other contention of plaintiff that these so-called carrying charges must necessarily be considered a part of the sale transaction, and first deducted from the sale price, in finding whether or not an actual "gain" was obtained by plaintiff from the sale. We have already seen that the court has indicated "that the statute imposes the income tax on the proceeds of the sale of personal property, to the extent only that gains are derived therefrom by the vendor." Goodrich v. Edwards, supra, page 535 (41 S. Ct. 391). The same would be true of real property.

The answer to plaintiff's contention that these so-called "carrying charges" are necessarily to be deducted from the sale price before an actual gain can be determined depends upon the consideration of their nature, and whether or not they are so inherently a part of the capital investment as to make it absolutely necessary to consider them, in order to determine whether or not this capital investment has "gained" or diminished. This leads us to consider what these taxes were and what this interest was.

To be sure, they are often called "carrying charges," and it goes without question that, in fixing a selling price, most business men include these charges and many other expenditures. For instance, there is interest lost on the taxes paid; there is loss of profits sometimes arising from failure to complete a building and thus secure rentals; there are losses from changes made in the use or proposed use of property; indeed, there are many things that some business men carefully consider when they name a sale price, but of all these taxes and interest are the most commonly considered. Yet taxes and interest, when properly defined, do not really represent anything paid into the capital investment, and it is a misnomer of their purpose to call them "carrying charges." Taxes represent "revenue collected from the people for objects in which they are interested—the contributions of the people for things useful and conducive to their welfare." Hilbish v. Catherman, 64 Pa. 154.

The only part that this property played, in the case of plaintiff, so far as her taxes were concerned, was to fix the basis on which to compute that portion of the general expense that she owed to the city and state, and she received, or at least is supposed to have received, benefits far in excess of the tax paid. Such benefits of public safety, public improvements, water, sewage, and many things that go unseen, but are very real, and which make, not only the ownership of property safe, but make it salable, because in this great city, had she attempted to buy all these things with simply her proportion of tax, it would have been impossible. It is therefore this community of effort with other owners that has made this city possible, and the amount of her property simply fixed what she had to pay into this common fund, for these common benefits. Such payments did not have as their purpose the ownership of property.

To be sure, these payments of herself and others may have indirectly increased the value of her property; but so did many other expenditures made, or which might be made, by herself and the others, such as the

coming of business stores, adequate transportation, etc., all of which might indirectly increase the value of her and their property.

Interest is the "compensation allowed by law or fixed by the parties for the use of money." This represents a small payment each year, by which some one else engages to "carry the property" in a much larger sum. In this case the mortgagee carried two-thirds of the risk. Plaintiff, therefore, has had the benefit of this arrangement, and her foresight has enabled her to make a gain with another's money. It seems to me that the purpose of this interest payment was, not that it should become a part of capital invested. It was rather a plan by which she obtained the capital of another, in order that she might make a gain with that other's money.

She could alone have "carried" the property by risking her own money, and not paid this interest; yet this interest on her money would have been present, but she could not have deducted it. Hays v. Gauley Mt. Coal Co., 247 U. S. 189, page 193, 38 S. Ct. 470, 62 L. Ed. 1061. So she preferred this plan, and thus got some one else to carry the property. Her repayment was in the result of the plan.

Thus it seems to me that plaintiff paid these taxes, not to "carry" the property, but because she carried it. She paid this interest, not to "carry" the property, but to get some one else to carry it, under circumstances where she could not have deducted the interest, had she carried it herself. Therefore these taxes, assessments, and interest paid are by nature not necessarily to be considered a part of the capital investment. Their purpose is entirely different. Their indirect effect is insufficient. They are not so inherently and by necessity a part of the cost or capital investment of the property that they must be considered in ascertaining a gross gain in the value of the property itself, and be deducted from a sale price thereof before any gain can be ascertained.

On the contrary, it seems to me that plaintiff's criticism is really directed to the law-making body, to the policy of the statute, rather than to the statute itself, or its constitutionality. It is easily conceivable that the people of the United States, represented in Congress, may think it better and fairer, because of the admittedly usual and ordinary actions of business men, to allow all taxes and interest for a reasonable time to be deducted from a selling price for the purpose of tax, but this would be a matter for Congress, reacting to the demands of those who buy and sell real estate, and, as I have indicated, there would still have to be many not unusual items omitted, and a certain time fixed, else every piece of property sold would likely show a loss. If 10 years is allowed, 50 years could be, and compound interest as well.

It seems to me that what the Supreme Court has decided is that there must be a gain in fact of the selling price over the original cost price, else there is no gain. Where the date of March 1, 1913, fixes an arbitrary low price, the parties can go back to the original cost, to show that, in fact, the selling price was really not a gain, but a loss. Here the property was bought for approximately $14,000 in 1910, and sold for $22,000, and the arbitrary date showed a conceded market value of approximately $16,000. Thus there was a steady gain.

The fact that the statute does allow certain deductions for taxes and interest is purely arbitrary, but is no ground for argument that all taxes and interests are therefore to be deducted. Reduction of burdens of taxation will undoubtedly resolve in greater liberality as to deductions allowed, and in my opinion it would be fairer to allow more than one year's taxes and interest in some cases, and in cases of unimproved real estate five or even ten years might not be excessive, under certain circumstances. The right to so deduct might also reflect itself in greater willingness to pay the growing burdens of populous cities and states, and undoubtedly would seem fairer to those who buy and sell real estate.

However, in my opinion, and on the facts here, the method pursued by the defendant in ascertainment of the tax was correct, according to the statute, and the statute is constitutional.