## APPEAL OF THE OTTAWA PARK REALTY CO.

Docket No. 5907.   Decided November 12, 1926.

Interest and taxes paid during the period of development of real estate for subdivision and sale may not be capitalized and treated as a part of the cost of such property.

*Ray E. Zachman, Esq.,* for the petitioner.
*Arthur H. Fast, Esq.,* for the Commissioner.

Petitioner appeals from the determination of a deficiency of $4,746.04 in income and profits taxes for 1919. It alleges that the Commissioner committed error in refusing to permit the taxpayer to treat as a capital expenditure interest and taxes paid during the period of development of a real estate project. The appeal was submitted upon the pleadings, the answer admitting the allegations of fact contained in the petition.

### FINDINGS OF FACT.

The taxpayer is an Ohio corporation with its principal office at Toledo. In 1915 and 1916 it purchased certain lands for the purpose of development, subdivision and sale. From the time of purchase until the year 1922 these lands were being improved and placed in shape to market as subdivision property.

During the year 1916 comparatively few sales were made because the land was in a raw condition. During the years 1916, 1917, and 1918, the sales were slow as the property was not in proper shape to sell readily. During the year 1919 the sales greatly increased.

During the four years mentioned, the taxpayer was required to pay interest and taxes on all unsold lots. The taxpayer adopted an accounting system as follows:

The sale of each lot was considered to be a separate transaction and was treated as such. Prior to the sale of any lot, certain amounts of interest and taxes were paid by the taxpayer, which were not deducted from income but were carried into asset accounts known as " deferred interest " and " deferred taxes."

Upon the sale of the lot, which in nearly all cases was upon the installment plan, the accumulated interest and taxes were deducted from the income over the period during which monthly payments on the sale price were received.

The Commissioner, in computing the deficiency, refused to capitalize such payments for taxes and interest, and deducted the total amount of interest and taxes paid and accrued on all lots, sold or unsold, from the income realized each year.

Interest and taxes were carried into the accounts known as " deferred interest " and " deferred taxes " during the years 1916 to 1919, inclusive, in accordance with the following table:

| Year. | Interest. | Taxes. | Total. |
|---|---|---|---|
| 1916 | $4,358.18 | $381.51 | $4,739.69 |
| 1917 | 8,535.69 | 4,609.86 | 13,145.55 |
| 1918 | 17,054.56 | 7,443.22 | 24,497.78 |
| 1919 | 1,715.61 | 2,865.15 | 1,049.54 |

In 1919 the amount of interest received was $1,715.61 in excess of the amount paid.

The total net profit for each of said years, as finally determined by the Commissioner, is as follows:

| Year. | Net profit. |
|---|---|
| 1916 | $4,001.40 |
| 1917 | 7,919.45 |
| 1918 | 1,435.17 |
| 1919 | 30,521.09 |

At the beginning of the year 1919 the accounts known as " deferred interest " and " deferred taxes " totaled $42,383.02, which amount the taxpayer included in invested capital in determining its taxes for the year 1919. In the deficiency letter the Commissioner excluded this amount from invested capital.

The amounts of interest and taxes carried into the asset accounts " deferred interest " and " deferred taxes " exceeded the total net income of the taxpayer from all sources as follows:

| Year. | Excess. |
|---|---|
| 1916 | $738.29 |
| 1917 | 6,226.10 |
| 1918 | 23,062.51 |
| Total | 30,026.90 |

Taxes on unsold lots during the year 1919 were carried to the "deferred taxes" account in the amount of $2,865.15. During said year interest was taken from the "deferred interest" account and deducted as an expense in the amount of $1,715.61. In computing the deficiency, the Commissioner disapproved the taxpayer's handling of both of these items, deducted the tax item as an expense, and held that the deferred interest adjustment was to be disregarded in computing the income, thereby decreasing the net income for said year in the amount of $1,049.54.

## OPINION.

TRAMMELL: The taxpayer, which was engaged during the year in question in developing a tract of land for the purpose of subdivision and sale, contends that it is entitled to add, as a part of the cost of each lot, mortgage interest and taxes paid upon each lot prior to its sale. The adjustments made by the Commissioner arise from his contention that such interest and taxes are deductions which are to be taken annually in computing income and can not be treated as additional cost of such property or as an investment of capital.

Under the statute interest and taxes are deductions which are to be taken annually in computing net income. The statute does not leave the question open to taxpayers and permit them to decide whether such payments are to be treated as capital expenditures or as deductible expenses, but provides that such payments shall be allowed as deductions from gross income in determining net income. They can not be treated as capital expenditures and added to the cost of the property in determining gain or loss from the sale thereof. *Westerfield* v. *Rafferty*, 4 Fed. (2d) 590; *Appeal of Columbia Theatre Co.*, 3 B. T. A. 622.

> *Judgment will be entered on 10 days' notice under Rule 50.*

PHILLIPS, dissenting: Taxpayer insists that it is a company producing articles for sale, is closely analagous to a manufacturing concern, and is entitled to treat interest and taxes paid on lots in process of development as part of the cost of such lots, and, therefore, as an increase in the cost of its inventory. It points out that during the years of development the interest and taxes were in fact paid out of its capital funds and represented a capital investment in the property.

Income has been defined to be "'gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale of conversion of capital assets." *Merchants Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509; *Eisner* v.

*Macomber*, 252 U. S. 189. In *Goodrich* v. *Edwards*, 255 U. S. 527, the court says:

The statute imposes the income tax on the proceeds of the sale of personal property *to the extent only that gains are derived therefrom by the vendor.* (Italics ours.)

Accepting this as the test, it becomes necessary to determine whether interest and taxes paid upon land during the period such land is being developed for the market are properly a part of the cost of the finished product which must be recovered before any taxable gain results. It is not a sufficient answer merely to say that the statute permits such items to be taken as deductions in computing net income. Deductions are allowed by statute in computing taxable net income because the Congress saw fit to allow them, but the right to take such deductions does not affect the concept of what constitutes income in the first instance. Within the meaning of the Constitution, cost must be recovered before there is any taxable gain. If carrying charges are in fact a part of the cost, they are none the less so because allowed as a deduction in computing net income subject to tax. For example, let us assume that Congress had provided that a limited amount expended in purchasing Liberty bonds should be allowed as a deduction in computing net income. Would any one contend that when such bonds were sold the entire proceeds must be included in gross income as taxable gain? If a debt created by a loan of money is ascertained to be worthless and charged off in one year and collected in a subsequent year, has income been realized when the amount loaned is collected? In such a case does it make any difference whether the debt was claimed as a deduction from income for the year in which it was ascertained to be worthless and charged off? And what is the situation if the debt was in fact ascertained to have been worthless but never charged off and never claimed as a deduction? If it is income in the year when collected, because allowed as a deduction in a prior year, is it any the less income because not charged off or deducted in the prior year if, in fact, it was ascertained to have been worthless in the prior year? It would seem that income in any year can not be determined by examining the returns of prior years to see whether certain deductions allowed by statute have been taken, or by examining the facts to see whether they should have been taken. Income, as applied to the instant appeal, can include only the amount realized from the sale of each lot in excess of the cost of such lot. Whether or not carrying charges were or could have been deducted annually, it becomes necessary to determine whether such carrying charges were in fact a part of the cost of the property sold.

It appears that this taxpayer purchased undeveloped real estate for the purpose of improvement, subdivision, and sale as building lots. There is no question that the amounts expended for physical improvements in converting the acreage into suitable building lots are a part of the cost of the property. In my opinion, the amounts expended in carrying property during the period of such improvement are also a part of the cost of the finished product. Taxpayer may be compared with a manufacturer who purchases raw cotton to manufacture into fabric. The cost of the finished product is not merely that of the raw material and labor entering into the article. Many other items, such as transportation and warehousing of the raw material, must be considered. Yet these add nothing to the capital value and, if the statute is to be literally construed, are deductible as ordinary and necessary expenses of the business. So with the taxes here involved. They add nothing to the capital value, but so long as they are paid out in connection with the production of the finished article they are properly a part of the cost of that article.

Aside from the general principles involved, legislative history convinces me that it was the intention of Congress that such items should constitute a part of the cost of the goods sold. Section 202(b) of the Revenue Act of 1924 provides in part:

(b) In computing the amount of gain or loss under subdivision (a) proper adjustment should be made for (1) any expenditure properly chargeable to capital account.

In submitting the draft of the 1924 Act, the Committee on Ways and Means of the House of Representatives said with reference to this section:

The rule laid down therein is substantially the same as the construction placed upon the existing law by the Treasury Department. It provides that in computing gain or loss from the sale or other disposition of property, the cost or other basis of the property shall be increased by the amount of items properly chargeable to capital account and decreased by the depreciation and similar deductions allowed with respect to the property. Under this provision capital charges, such as improvements, and betterments, and carrying charges, such as taxes on unproductive property, are to be added to the cost of the property in determining the gain or loss from its subsequent sale * * *.

The Revenue Act of 1918 does not contain the provisions quoted, but there would seem to be no doubt that if " carrying charges, such as taxes on unproductive property," are " properly chargeable to capital account " under the 1924 Act, as the Committee considers to be the case, they must likewise be chargeable to capital account under constitutional requirements, as laid down by the Supreme Court, that capital invested must be recovered before any income is realized. *Merchants Loan & Trust Co.* v. *Smietanka, supra; Eisner* v. *Macomber, supra;* and *Goodrich* v. *Edwards, supra.*

In passing it might be noted that article 231 of Regulations 62, issued under the Revenue Act of 1921, provides:

In the case of a timber property held for future operation .* * * all expenditures for administration, protection, and other carrying charges prior to production on a normal basis, shall be charged to capital account; after such a property is on a normal production basis such expenditures shall be treated as current operating expenses.

There would seem to be no doubt that any prudent business man entering upon a project such as is described in this article of the regulations looks forward to the carrying charges as a part of the cost of the production of timber which is to take place and arranges his finances accordingly. It has been said that the Constitution is to be interpreted in the light of the common understanding existing at the time of its adoption and, if we are right in believing that carrying charges are, as the regulations must indicate, ordinarily considered as a part of the cost of the article produced, they should be considered as part of the cost within the definition of the word "income." It is impossible to distinguish in principle between timber property held for future operations and acreage held for subdivision. If the decision in the present appeal is correct, the article of the regulations quoted can not be justified.

There is the further consideration that the accounts kept by the taxpayer have consistently capitalized the expenditures for interest and taxes. They correctly reflect income in accordance with the best accounting practice used in such business, and under section 212(b) of the Revenue Act of 1918 should be accepted as the basis for determining income. *Appeal of Amalgamated Sugar Co.*, 4 B. T. A. 568.

For the reasons stated I must dissent from the conclusion reached.

TRUSSELL concurs in this dissent.