HAYS, COLLECTOR OF INTERNAL REVENUE FOR
THE DISTRICT OF WEST VIRGINIA, *v.* GAULEY
MOUNTAIN COAL COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
FOURTH CIRCUIT.

No. 327.   Argued March 4, 5, 6, 1918.—Decided May 20, 1918

The Corporation Tax Act of August 5, 1909, c. 6, 36 Stat. 11, 112, § 38,
  measures the tax by income received during the tax year without
  reference to when it accrued, provided it accrued after the act be-
  came effective. *Gray* v. *Darlington*, 15 Wall. 63, distinguished.
A coal company bought shares of another coal company before, and
  sold them at an advance after, the Corporation Tax Act became ef-
  fective. *Held:* (1) That interest should not be added to the invest-
  ment as a part of the cost; (2) that so much, and only so much, of
  the advance as could be deemed to have accrued since December 31,
  1908, was part of the company's "gross income," within the act.
  *Doyle* v. *Mitchell Brothers Co.*, ante, 179.
230 Fed. Rep. 110, reversed.

THE case is stated in the opinion.

*The Solicitor General*, with whom *Mr. Wm. C. Herron*
was on the brief, for petitioner.

*Mr. Henry B. Closson*, for respondent, submitted.

*Mr. Robert R. Reed*, by leave of court, filed a brief on behalf of the Investment Bankers' Association of America, as *amicus curiæ*.

MR. JUSTICE PITNEY delivered the opinion of the court.

Suit by the Gauley Mountain Coal Company against the Collector to recover taxes alleged to have been unlawfully collected under Corporation Excise Tax Act of August 5, 1909, c. 6, 36 Stat. 11, 112, § 38. The District Court gave judgment in favor of defendant, which was reversed by the Circuit Court of Appeals (230 Fed. Rep. 110), whereupon a writ of certiorari was allowed. The case was submitted together with several other cases decided this day, arising under the same act.

The agreed facts are in substance as follows: The Company is a mining corporation organized under the laws of the State of West Virginia. The business of trading in stocks is not included among its corporate powers, nor does it appear that, with a single exception, it ever bought or sold any. On December 9, 1902, it purchased certain shares of another mining corporation for $800,000, and sold them October 16, 1911, for $1,010,000, this sum being less by $214,933.33 than the purchase price plus interest at 6 per cent., but greater by $210,000 than cost ignoring interest. The Commissioner of Internal Revenue held that a proportion of the $210,000 represented by the ratio of the 1,019 days that elapsed between January 1, 1909, when the Corporation Excise Tax Act became effective, and October 16, 1911, the date of the sale, to the 3,233 days that elapsed between the date of purchase and the date of sale, constituted income of the corporation for the year 1911 within the meaning of the act. The apportioned sum, $66,189.30, reduced to $52,506 by certain deductions not now in question, was made the basis of an additional assessment at 1 per cent. upon the latter sum;

and this assessment, having been collected by duress, formed the subject of the present suit.

The decision of the Circuit Court of Appeals, and the principal contentions made by respondent in support of it, are based upon the decision of this court in *Gray* v. *Darlington*, 15 Wall. 63. That case arose under the Act of Congress of March 2, 1867, c. 169, § 13, 14 Stat. 477, which provided that a certain tax should be levied, collected, and paid annually upon the amount over $1,000 of the gains, profits, and income of every person, declaring that "the tax herein provided for shall be assessed, collected, and paid upon the gains, profits, and income for the year ending the thirty-first day of December next preceding the time for levying, collecting, and paying said tax." There was this further provision: "That, in estimating the gains, profits, and income of any person, there shall be included all income derived from interest upon notes, bonds, and other securities of the United States; profits realized within the year from sales of real estate purchased within the year or within two years previous to the year for which income is estimated . . . and all other gains, profits, and income derived from any sources whatever," with an exception that need not be stated. It appeared that plaintiff acquired certain United States bonds in the year 1865 and sold them in 1869 at an advance of $20,000 over their cost, and was taxed upon this amount as gains, profits, and income for the latter year. This court held that by the true construction of the act, except as to gains and profits from trade and commerce and sales of real property, the statute only applied to such gains, profits, and income as were strictly acquisitions made during the year preceding that in which the assessment was levied and collected. We do not regard the decision as controlling, because the language of the act now under consideration is different in material particulars. As pointed out in *Doyle* v. *Mitchell Brothers Co., ante,* 179,

it imposes annually a special excise tax with respect to the carrying on or doing business by the corporation "equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year," to be ascertained by taking gross income and applying certain exceptions and deductions. "Gains, profits, and income *for* the year ending the thirty-first day of December next preceding" (Act of 1867) conveys a different meaning from "the entire net income . . . *received by it* . . . *during* such year" (Act of 1909). The former expression, as this court held (15 Wall. 65), denoted "such gains or profits as may be realized from a business transaction begun and completed during the preceding year," with the exceptions already mentioned. The expression "income *received during* such year," employed in the Act of 1909, looks to the time of realization rather than to the period of accruement, except as the taking effect of the act on a specified date (January 1, 1909), excludes income that accrued before that date. There are other differences upon which we need not dwell.

As we construe the latter act, it measured the tax by the income received within the year for which the assessment was levied, whether it accrued within that year or in some preceding year while the act was in effect; but it excluded all income that accrued prior to January 1, 1909, although afterwards received while the act was in effect.

This brings us to consider whether the proceeds of the sale of stock by respondent in October, 1911, included anything, and if so how much, of "income" accruing on or after January 1, 1909, as the term "income" is employed in the act.

That the sale resulted in a gain or profit to the extent of $210,000, the difference between the buying and selling prices, is not to be doubted, for there is no merit in the

contention that interest should be added to the purchase price in order to ascertain its cost. The money that went into the purchase was not loaned at interest; on the contrary, by the very fact of the purchase it was placed where it could not earn interest for the respondent in the ordinary sense, and the gain represented by the increase of selling price over cost price must be regarded as a substitute for whatever return some other form of investment might have yielded.

It results that so much of the $210,000 of profits as may be deemed to have accrued subsequent to December 31, 1908, must be treated as a part of the "gross income" of respondent. For it is the simple case of a conversion of capital assets acquired before and turned into money after the taking effect of the act; and, as we have shown in *Doyle* v. *Mitchell Brothers Co.*, *ante*, 179, since the conversion of capital often results in gain, the general purpose of the Act of 1909 to measure the tax by the increase arising from corporate activities together with the income from invested property leads to the inference that that portion of the gross proceeds which represents gain or increase acquired after the taking effect of the act must be regarded as "gross income"; and to this end it must be distinguished from that portion which represents a return of the capital value existing before. In order to do this, it is necessary to ascertain what was the value of the capital assets on December 31, 1908. Whether this should be done by taking inventory upon the basis of market values then existing, or whether the entire increment accruing between the time of acquiring and the time of disposing of the assets should be prorated as if it had arisen through a series of gradual and imperceptible augmentations, is a matter of detail, to be settled according to the best evidence obtainable; and in accordance with valid departmental regulations. Treasury Regulations No. 31, December 3, 1909, provided

for inventories at the beginning and end of each year with respect to manufacturing and mercantile companies; and with regard to a sale of capital assets acquired prior to January 1, 1909, and sold thereafter, required that the amount of increment or depreciation representing the difference between the selling and buying prices should be adjusted so as fairly to determine the proportion of the loss or gain arising subsequent to the date mentioned; but without prescribing any particular method of doing this. Subsequent rulings required that sales of stocks and bonds should be regarded as sales of capital assets and accounted for accordingly under Regulations No. 31, and, while still requiring inventories, resorted to the prorating method with respect to real estate, apparently on the ground that increases and decreases in the value of this class of property during particular periods could not be accurately determined. (T. D. 1606, March 29, 1910, paragraphs 37, 50, 71; T. D. 1675, February 14, 1911, paragraphs 36, 48, 55, 69; T. D. 1742, December 15, 1911, paragraphs 42, 55, 62, 86.)

The present case was heard upon an agreed statement of facts which contains nothing from which the value of the stock at the time the act took effect may be deduced, otherwise than by the prorating method that was adopted; nor is any objection made by the respondent to the application of that method. Hence there is no lawful ground for overthrowing the tax, and the District Court did not err in rendering judgment in favor of the Collector.

*Judgment of the Circuit Court of Appeals reversed, and that of the District Court affirmed.*