NEW YORK LIFE INS. CO. v. ANDERSON, Internal Revenue Collector.

(District Court, S. D. New York. February 11, 1919.)

1. INTERNAL REVENUE ⬀9—DIVIDENDS PAID BY INSURANCE COMPANY TO POLICY HOLDERS OR CREDITED ON PREMIUMS MUST BE EXCLUDED IN COMPUTING THE COMPANY'S INCOME.

Dividends or surplus, which life insurance companies are required by Insurance Law N. Y. § 83, either to pay policy holders in cash or to credit upon premiums due from them, must be excluded in determining the income of the company for the purposes of taxation.

2. INTERNAL REVENUE ⬀9—DEPRECIATION IN MARKET VALUE OF SECURITIES NOT ALLOWED AS DEDUCTION WHERE NOT REALIZED BY SALE.

In computing the income of an insurance company for assessment under Act Aug. 5, 1909, c. 6, § 38, par. 2, which allowed all losses actually sustained within the year and not compensated by insurance, together with reasonable allowance of depreciation of property, to be deducted, depreciation of securities taken at market value during the year cannot be deducted, where the depreciation was not realized by sale of depreciated securities.

At Law. Action by the New York Life Insurance Company against Charles W. Anderson, Internal Revenue Collector. Verdict directed for plaintiff.

Judgment reversed, 263 Fed. 527, —— C. C. A. ——.

See, also, 257 Fed. 576.

James H. McIntosh, of New York City, for plaintiff.

Francis G. Caffey, U. S. Atty., of New York City, for defendant.

LEARNED HAND, District Judge. [1] In Conn. Mut. Ins. Co. v. Eaton (D. C.) 218 Fed. 206, affirmed 223 Fed. 1022, 138 C. C. A. 663, which is authoritative upon me, the resolution of the insurer under which the dividends were paid provided that dividends were payable upon all policies in force at the beginning of the ensuing year. The resolution gave the right to the dividend upon payment "or nonpayment when due" of the succeeding premiums. One of the insured's options was to receive the dividend in cash. As I understand the facts, therefore, the debt was absolute upon all policies which had been kept

in force during the year in which the dividend was earned. If so, I see no difference between that case and a policy issued under section 83 of the New York Insurance Law (Consol. Laws, c. 28). It can make no difference that the dividend is a debt made absolute by statute instead of by contract. Therefore that case appears to me to be on all fours with the case at bar. In Mut. Ins. Co. v. Herold (D. C.) 198 Fed. 199, affirmed 201 Fed. 918, 120 C. C. A. 256, the facts are not clear, and this may not have been the situation.

Moreover, in principle I think there is no distinction, even if the debt be not absolute. Assume, if one please, that the payment of the dividend in Conn. Mut. Ins. Co. v. Eaton, supra, was conditional upon the insured's payment of the next succeeding premium; even so, when he elected to pay that premium, the dividend became an absolute debt, payable in cash. In such cases as the insured had so elected, as he did in all cases there under consideration, his further election to accept, not cash, but credit upon his premium, discharged an absolute debt quite as much as a similar election under section 83 of the New York Insurance Law. Perhaps the discharge of such a debt ought to have been considered equivalent to the receipt of an equal sum of money —i. e., as income; but the law is fixed otherwise, and unless there be some distinction I must follow it.

So it seems to me that, as respects all policies on which the insured have elected to pay the balance of their premiums during the year for which the tax is levied, the credit of the dividends was as much a payment where the New York law did not apply, as where it does. I hold, therefore, both on the facts of Conn. Mut. Ins. Co. v. Eaton, supra, and upon principle, that the plaintiff is right as to this item, and it may have a verdict as to so much.

[2] The remaining point is as to the depreciation of securities taken at market value during the year. It is quite apparent that, if this depreciation be accepted as a deduction, and no appreciation be added, the insurer may slowly over a series of years credit itself with possibly the whole value of its securities and without any corresponding offset. This is obviously an unreasonable result, which could not have been intended. The question is whether the depreciation falls within the deductions covered by paragraph 2 of section 38 of the act of 1909 (36 Stat. 112, c. 6). Of the deductions so allowed the only one appropriate is:

"All losses actually sustained within the year, and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property if any."

This clause of the statute undoubtedly goes to a "depreciation" which has not yet been realized by sale of the depreciated property; so much one must allow. If the securities had been sold, I need not say that the loss would not have been a proper item of allowance. The clause is not intended to cover that situation. The question is whether it should be limited to the loss in actual use value, due to wear and tear, reflected in a fall in money value. It seems to me quite clear that it should be so limited. The fluctuations in the market value of a com-

mercial security, as in the case of a stock of goods, are constant from month to month. No one regards them as a final depreciation in value from which the property will not recover. It may or may not; but, if there has been no certain deterioration in those elements which contribute to the beneficial use of the property, and which prevent it from ever commanding the same opinion of its value as before, the loss has not, I think, been "actually sustained." When consumable goods are in part worn out, they can never recover their earlier condition. It is true that their value may recover, owing to the increased value of all their class, new and used; but the proportion between the value of new and used goods of that kind is presumptively unchanged. The loss has then been "actually sustained," in the sense that it cannot be recouped. This is what I think the language means. It refers to such goods as by reason of their physical deterioration are permanently impaired in use, from which impairment there was no chance of recovery.

Such an interpretation, moreover, accords with common business understanding. A manufacturer charges his profits with the loss to his machinery and buildings, due to wear and tear, recognizing that the necessity of the upkeep of his capital will in the end inevitably require some such allowance. A merchant, on the other hand does not ordinarily include the variations in the market values of his stock in counting his profits. They may shortly be restored to their value, and the time to charge his profit with them is when they are sold, and the gain or loss finally ascertained.

Cases like Stratton's Independence v. Howbert, 231 U. S. 399, 34 Sup. Ct. 136, 58 L. Ed. 285, and those which follow it, or Doyle v. Mitchell Bros. Co., 247 U. S. 179, 38 Sup. Ct. 467, 62 L. Ed. 1054, and those which follow it as well, are quite different. The question was how the gross income was to be estimated, particularly what allowance should be made for the original value of the raw material, which had been worked up and sold as a finished product. Hays v. Gauley Mountain Coal Co., 247 U. S. 189, 38 Sup. Ct. 470, 62 L. Ed. 1061, was a case where securities were actually sold, and the question was also one of gross income. It did not determine what was to be considered the proper deduction for depreciation not realized by conversion into cash. Nor do any of the cases cited in the lower courts seem to me to be in point. While the case appears, therefore, to be one of first impression, I do not hesitate to hold that the defendant is right upon this item.

The plaintiff will take no interest upon the first item of $694.52 in the agreed statement. A verdict will be directed for the amount found in accordance with the foregoing.