OSWEGO & SYRACUSE RAILROAD CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8157. Promulgated December 27, 1927.

*Walter A. Staub, C. P. A., J. Marvin Haynes, Esq.,* and *Douglas Swift, Esq.,* for the petitioner.

*Paul I. Payton, Esq.,* and *M. N. Fisher, Esq.,* for the respondent.

OPINION.

MILLIKEN: The facts were stipulated and our findings are in accord with the stipulations.

Petitioner contends that interest paid by it on money which was used for constructing additions and betterments was, to the extent of interest paid during the period of construction, a part of the cost of such improvements. It makes the same contention with reference to the discount incurred by it in the issue and sale of its bonds. The deductibility of interest and discount incurred is not involved, but only the question of the exclusion of same from invested capital.

Petitioner's contention is in conflict with the decisions of the Board in *Columbia Theater Co.*, 3 B. T. A. 622; *Ottawa Park Realty Co.*, 5 B. T. A. 474; *Spring Valley Water Co.*, 5 B. T. A. 660; *Eastern Rolling Mill Co.*, 5 B. T. A. 663; and *Arthur C. Fraser*, 6 B. T. A. 346. The citation of and reliance upon our decided cases would suffice for the decision of this question, but the exhaustive brief filed by counsel for petitioner inclines us to a discussion of the authorities cited and relied on.

In view of the conclusions we have reached, it is not necessary to decide whether the discount incurred stands on the same basis as interest paid insofar as invested capital is concerned.

In support of its contention, counsel for petitioner cites the following cases: *Brunswick & T. Water District* v. *Maine Water Co.*, 99 Me. 371; 59 Atl. 537; *Long Branch Commission* v. *Tintern Manor Water Co.*, 70 N. J. Eq. 71; 62 Atl. 474; *Pioneer Telephone & Telegraph Co.* v. *Westenhaver*, 29 Okla. 429; 118 Pacific 354; and *Shepard* v. *Northern Pacific Ry.*, 184 Fed. 765. It also refers to certain decisions by state railway commissions and rules prescribed by the Interstate Commerce Commission. All these decisions and rules relate to valuations of public utilities for rate-making purposes. In all such proceedings, the controlling issue is present value and the owner is entitled to any increase in value that may have accrued since acquisition. Cf. *McCardle* v. *Indianapolis Water Co.*, 272 U. S. 400. Precisely the reverse is true in this respect as to invested capital. See *LaBelle Iron Works* v. *United States*, 256 U. S. 377; 3 Am. Fed. Tax Rep. 3113. This difference in viewpoint is so vital that little help can be derived from rate-making decisions in ascertaining what should be included in invested capital. The cases

cited hold that interest paid during the construction period should be taken into consideration in computing the cost of a public utility, especially when computing the cost of reproduction. But they further hold that there should be included in such cost, not only the interest actually paid, but also a fair rate of interest on the capital that was not earning income during such period. This latter conception is wholly foreign to the theory of income taxes. Thus, it was said in *Walsh* v. *Brewster*, 255 U. S. 536; 3 Am. Fed. Tax Rep. 3108:

> The second transaction involved the purchase in 1902 and 1903 of bonds of the International Mercantile Marine Company for $231,300, which were sold in 1916 for $276,150. This purchase was made through an underwriting agreement such that the purchaser did not receive any interest upon the amount paid prior to the allotment to him of the bonds in 1906, and he claimed that interest upon the investment for the time which so elapsed should be added as a part of the cost to him of the bonds. But this claim was properly rejected by the trial court under authority of *Hays* v. *Gauley Mountain Coal Co.*, 247 U. S. 189, 38 Sup. Ct. 470, 62 L. Ed. 1061.

Under the above theory, a corporation whose paid in capital was idle during the period of construction, could build up an earned surplus of theoretically earned and received income. Such a theoretically earned surplus has no place in the statutory concept of invested capital. Cf. *LaBelle Iron Works* v. *United States, supra.*

The rule which includes interest actually paid during the construction period is based on the same reason that includes in such cases interest on idle capital. In both cases, the dominating thought in all rate cases, to wit, value, has crept in. The reason for the rule is thus stated in *Pioneer Telephone & Telegraph Co.* v. *Westenhaver, supra.*

> It is a matter within the observation and knowledge of all that a plant, the cost of whose physical units put together into a completed plant approximates $100,000, cannot be constructed instantly. It requires time to assemble the physical properties, and still a greater length of time to put those units into place, where they may be used to render service. During this period, the capital invested must of necessity be idle, and no income can be derived therefrom. When the construction of the plant is completed, no willing seller, who is not forced to sell, would take for his plant the cost of the physical units and the cost of the labor in the construction, because the plant has cost him, in addition thereto, the use of the capital, or a certain part thereof, invested in the capital, or a certain part thereof, invested in the physical properties during the time of construction. A willing buyer could afford to pay, and would pay, more than the actual cost of labor and material, assuming that the plant has been economically constructed, because such cost would not represent the total expenditures the purchaser would have to make in order to construct the plant himself. In addition to such expenditures, he would have to expend the earnings of his capital during the period of construction. No case has been cited and in our investigation we have found no case, involving this question where a reasonable amount has not been considered and allowed for loss of interest during construction as part of the cost of construction.

The controlling thought in the above decision is that since a willing buyer could afford to pay more for the constructed plant than its actual cost, therefore interest on idle capital should be taken into consideration as an element of cost. It is thus apparent that the court has confused the term value with the term cost. This is not surprising since what the court was endeavoring to arrive at was value and not cost. The same theory, if applied in *Walsh* v. *Brewster, supra*, would have resulted in adding to cost interest from the time of the purchase of the bonds until their delivery, at which time they first began to bear interest. The Supreme Court, however, held that such interest could not be added to cost.

The interest paid by petitioner during the period of construction was not paid for construction but for the use of the money borrowed. The cost of the improvements was one thing and the cost of the money was another. From a tax standpoint, we can see no difference between interest paid during the period of construction and interest paid on the same debt thereafter. The fact that during such period no income was being earned by the improvements did not change a deductible expense into a capital item in this case any more than in *Walsh* v. *Brewster, supra.*

Invested capital is a statutory concept. The meaning of that term is set forth specifically in section 326 of the Revenue Act of 1918. It seems clear that the sum sought to be included in invested capital does not represent (1) actual cash bona fide paid in for stock or shares—no sum was paid in for such purpose; (2) actual cash value of tangible property, other than cash, bona fide paid in for stock or shares—there was no tangible property bona fide paid in for stock or shares; (3) paid-in or earned surplus and undivided profits—the sum paid, now sought to be included in invested capital, in fact represents a diminution of earned surplus and undivided profits; (4) intangible property bona fide paid in for stock or shares prior to March 3, 1917—certainly no intangible property was paid in for stock or shares; or (5) intangible property bona fide paid in for stock or shares on or after March 3, 1917.

We adhere to the conclusions reached in the previous decisions of the Board. Respondent did not err in refusing to permit the inclusion in invested capital of interest paid during the period of construction and the discount on petitioner's bonds applicable to the same period.

Petitioner's second contention involves the construction of section 201 of the Revenue Act of 1918. The pertinent parts of that section read:

(a) That the term "dividend" when used in this title (except in paragraph (10) of subdivision (a) of section 234) means (1) any distribution made by a

corporation, other than a personal service corporation, to its shareholders or members, whether in cash or in other property or in stock of the corporation, out of its earnings or profits accumulated since February 28, 1913, or (2) any such distribution made by a personal service corporation out of its earnings or profits accumulated since February 28, 1913, and prior to January 1, 1918.

(b) Any distribution shall be deemed to have been made from earnings or profits unless all earnings and profits have first been distributed. Any distribution made in the year 1918 or any year thereafter shall be deemed to have been made from earnings or profits accumulated since February 28, 1913, or, in the case of a personal service corporation, from the most recently accumulated earnings or profits; but any earnings or profits accumulated prior to March 1, 1913, may be distributed in stock dividends or otherwise, exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed.

\* \* \* \* \* \* \*

(e) Any distribution made during the first sixty days of any taxable year shall be deemed to have been made from earnings or profits accumulated during preceding taxable years; but any distribution made during the remainder of the taxable year shall be deemed to have been made from earnings or profits accumulated between the close of the preceding taxable year and the date of distribution, to the extent of such earnings or profits, and if the books of the corporation do not show the amount of such earnings, or profits, the earnings and profits for the accounting period within which the distribution was made shall be deemed to have been accumulated ratably during such period.

It is apparent, from the facts as found, that the dividends paid on February 20 of the years 1918, 1919, and 1920, could have been paid from only two sources—either they were paid out of earnings and profits accumulated prior to March 1, 1913, or they were paid out of the earnings and profits accumulated subsequent thereto.

Under the provisions of section 201(e) the dividend in question is deemed to have been made from earnings and profits accumulated during the preceding taxable years. Under section 201(b) a corporation could not distribute tax-free its earnings and profits accumulated prior to March 1, 1913, until it had distributed all earnings and profits accumulated subsequent thereto. We entertain no doubt that the presumption set forth in 201(e) is a conclusive one. However, we must determine the extent to which it is to be applied. We do not believe that it means that a distribution made during the first 60 days was made from earnings or profits accumulated during preceding taxable years quite regardless of whether or not there were in fact any such earnings or profits. The statute certainly imposes no conclusive presumption that something was done that could not, under the stated facts in this case, have been done. Section 201(e) simply creates a conclusive presumption that a distribution made during the first 60 days was made from earnings and profits of prior taxable years only if and to the extent that such earnings or profits actually existed. This view harmonizes with other provisions of the section. A simple illustration may clarify the situation: The "A"

corporation had, on January 1, 1918, earnings and profits all accumulated prior to March 1, 1913, amounting to $1,000, and on February 1, 1918, without having made any additional earnings and profits, it declared a dividend of $1,000. By reason of the provisions of section 201(b) such a dividend would be treated as paid out of earnings and profits accumulated prior to March 1, 1913, and would be exempt from tax. But respondent would impose the presumption contained in section 201(e). It is, of course, true that if on February 1, 1918, the corporation had earnings or profits made after January 1, 1918, to the amount of $1,000, the dividend would be deemed to have been paid out of such earnings or profits rather than earnings or profits accumulated prior to March 1, 1913, for otherwise, we would be going contrary to the provisions of section 201(b). Cf. *Mason v. Routzahn*, 275 U. S. 175.

We are, accordingly, of the opinion that in each of the years in question the dividend was paid out of earnings and profits of the preceding taxable years to the extent that the earnings and profits of such years were available and the remainder was paid out of the earnings and profits of the current year to the extent they were available. The parties have stipulated that of the total surplus at January 1, 1918, $43,627.46 constituted earnings and profits of a prior taxable year, and in accordance with such stipulation we find that to such extent the dividend of $59,418, of February 20, 1918, was paid out of earnings and profits of a prior taxable year and the remaining amount thereof was paid out of the earnings and profits of the current year to the extent there were earnings available. Invested capital should be adjusted in accordance with the foregoing.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*