## FRASER v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Second Circuit.
April 9, 1928.

No. 232.

1. **Appeal and error ⬥882(21)—Respondent, who led appellant to believe record was sufficient, could not claim on appeal that point was not covered by findings.**

Respondent, who admitted materiality of matters not shown by record and led appellant to believe that record was sufficient, could not on appeal insist that point was not involved, because not contained in court's findings.

2. **Internal revenue ⬥7(1)—Taxing powers relative to income tax are exercised with latitude necessary to realize purposes intended.**

Power conferred by income tax statute is to be exercised with such latitude as is necessary to realize purposes in view, with regard to constitutional implications, and it is no objection that tax may comprise more than economic theory would strictly justify.

3. **Internal revenue ⬥7(11)—Annual interest and taxes paid to carry real property before March 1, 1913, may not be added to cost in stating profit on sale thereof, for determination of income tax.**

Annual interest and taxes paid to "carry" real property before March 1, 1913, may not be added to cost in stating profit on sale of property in income tax return, since such division of value would render assessment of taxes speculative and burdensome; approximation to economic theory in levying taxes being sufficient.

Appeal from the Board of Tax Appeals.

Proceeding by the Commissioner of Internal Revenue against Arthur C. Fraser for the assessment of income tax, taken to the Board of Tax Appeals. From an order of the Board of Tax Appeals, the taxpayer appeals. Affirmed.

Fraser, the appellant, appealed to the Board of Tax Appeals from assessments by the respondent of his income tax which included profits upon the sale of a parcel of real estate in Brooklyn, N. Y. The facts as found by the board were as follows: Fraser bought the parcel in 1905, 66⅔ feet in width, for the price of $11,000. His legal expenses and commissions at the time were $431.01. Between then and 1909 he paid taxes on the property of $565.09 and interest of $2,805, upon deferred installments of the price. In December, 1909, he sold off 16⅔ feet, and in 1910 built a house on the remaining 50 feet for $8,600. Thereafter and until March 1, 1913, he paid out for legal services, surveyor's fees and assessments, $555.82, taxes $761.82, water charges $51, insurance $40, and for interest upon a mortgage for deferred installments of the price $3,727.29. He was allowed $1,507.50 for depreciation upon his income tax returns between 1913 and 1920 when he sold the parcel. The fair market value on March 1, 1913, was $19,500, and he sold in 1920 for $22,000, out of which he was forced to pay $620 for expenses of the sale, leaving a net of $21,380.

The board subtracted the 1913 value (less depreciation), $17,992.50, from the net price received, $21,380, leaving a profit of $3,387.-50 to be included as profit. Fraser contended that in ascertaining the cost he should have been allowed to add to the original purchase price, properly allocated to the part remaining after the sale, the taxes, interest and other expenses paid by him, between 1905 and March 1, 1913. If this were done, the balance resulting would be more than the sale price, and, instead of a profit, he would show a loss.

Fraser, Myers & Manley, of New York City (Arthur C. Fraser and Franklin G. Manley, both of New York City, of counsel), for appellant.

Mabel Walker Willebrandt, Asst. Atty. Gen., C. M. Charest, and V. J. Heffernan, all of Washington, D. C., for respondent.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). **[1]** The record does not contain any findings by which the original cost can be ascertained of the 50 feet which remained after the sale of 1909, nor of the proper allocation of the expenses before that time. For this reason the respondent insists that the point is not before us. However, it is plain from the action of the board that their decision hinged upon the question now mooted, and before that tribunal the respondent conceded it to be relevant. Having led the appellant to suppose that the record was sufficient, the respondent raises the defect with scant grace. We proceed therefore to the merits.

The question is whether annual interest and taxes paid to "carry" real property before March 1, 1913, may be added to the cost in stating the profit on its sale in an income tax return. We are to distinguish assessments levied for permanent improvements, such as pavements, sewers, grading, and the like. These presumptively increase the value of the property and may be like improvements made at the will of the owner. Annual taxes and interest are not of this class; they do not improve the value of the property, but are payments necessary to the mere retention of ownership. Meanwhile the owner has the use of the property, which prima facie is a quid pro quo. It makes no difference how he employs it; that rests in his pleasure, and he gets his return in profit or in kind as he chooses to have it. The two sides of the account form a part of his income during the years in question. Since that income was not taxable before March 1, 1913, he retains his profits unimpaired and must bear his losses unrelieved.

It is quite true that the value of property, especially "unimproved" real property, is often in part made up of the discounted capitalization of greater future uses. It is expected to advance in value, and that expectation gives it a present value greater than is represented by any use to which it can now be put. So far as the value is so constituted, it is possible to regard the "carrying charges" as payments necessary to the eventual acquisition of the advance, and it does not wrench common usage to speak of them as entering into its cost, as in the case of aging wine or of land lying fallow. If a taxing act must conform to all the niceties of economic theory, or for that matter of economic fact, we might have to answer that question, but we think it need not, Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149. Obviously, any such division of value would introduce into the assessment of taxes inquiries, speculative, insusceptible of

any certain conclusion, and burdensome and dilatory in the extreme. No government is obliged so to clog its operation, particularly in its most vital function. Some gross accommodation to the economic reality is all that is demanded; it is not fatal that the fit is not perfect. The charges here involved are in form, and in part also in substance, necessary to the enjoyment of the property de die in diem; we think that enough to put them out of the class of costs.

[2] This is the way that the statute treats them after March 1, 1913, although the same considerations apply thereafter as before. The inconsistency of applying one rule for one period and another for another might not necessarily be a fatal objection, but it gives us warrant to assume that the intention was the same in each case and to carry over the letter where the letter does not literally apply. As for constitutional implications, the power conferred is to be exercised with such latitude as is necessary to the realization of the purposes in view, Purity Extract Co. v. Lynch, 226 U. S. 192, 33 S. Ct. 44, 57 L. Ed. 184; Ruppert v. Caffey, 251 U. S. 284, 299, 40 S. Ct. 141, 64 L. Ed. 260. It is no objection that it may comprise more than economic theory might strictly justify.

Again, at least as to interest charges, we should have to include not only that actually paid upon borrowed money, but that calculated upon the amount invested. Otherwise the profit of a speculator would be less than that of an investor, a result contrary to common understanding. Certainly it can make no difference how the owner procures the purchase price, whether from funds in hand, or on his bare credit, or on security, or with the help of sureties. Hays v. Gauley Mountain Coal Co., 247 U. S. 189, 38 S. Ct. 470, 62 L. Ed. 1061, decided that interest upon the amount invested was not part of the cost, and the principle there settled seems to us to involve interest on borrowed money as well.

[3] The appellant's reliance is and must be on Goodrich v. Edwards, 255 U. S. 527, 41 S. Ct. 390, 65 L. Ed. 758, and Walsh v. Brewster, 255 U. S. 536, 41 S. Ct. 392, 65 L. Ed. 762, decided under the Act of 1916 (Comp. St. § 6336a et seq.), and U. S. v. Flannery, 268 U. S. 98, 45 S. Ct. 420, 69 L. Ed. 865, and McCaughn v. Ludington, 268 U. S. 106, 45 S. Ct. 423, 69 L. Ed. 868, under the Act of 1918 (Comp. St. § 6336⅛a et seq.). These cases held that in finding the "actual gain" recourse might be had to the cost before March 1, 1913, if that was more than the value at that time, and that in respect of losses the "actual loss" was to be

similarly reckoned. While it is true that these cases would entitle the owner to include the cost of improvements made before March 1, 1913, we cannot see that they throw any light upon the question at bar. Westerfield v. Rafferty, 4 F.(2d) 590 (D. C. E. D. N. Y.), is the only case in the courts which deals with that question, and that accords with our views. The Treasury has undoubtedly fluctuated in its dealing with the matter, and we agree that it is not wholly free from doubt, but it appears to us that the Board of Tax Appeals has adopted the proper rule.

Order affirmed.