## OSWEGO & S. R. CO. v. COMMISSIONER OF INTERNAL REVENUE.*

Circuit Court of Appeals, Second Circuit.
December 3, 1928.

No. 69.

*Certiorari denied, 49 S. Ct. —, 73 L. Ed. —.

Douglas Swift and Robert H. Montgomery, both of New York City, for appellant.

Mabel Walker Willebrandt, Asst. Atty. Gen., and Sewall Key and Morton P. Fisher, Sp. Asst. Attys. Gen. (C. M. Charest and Clark T. Brown, both of Washington, D. C., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). ▮ The practice of ordinary accounting is to allocate interest during construction to capital investment, and when estimating rate bases in fixing reasonable rates for public service companies, courts have done the same. Shepard v. Northern Pac. Ry. Co. (C. C.) 184 F. 765, 809, affirmed sub nom. Minnesota Rate Cases, 230 U. S. 352, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; Des Moines Gas Co. v. Des Moines, 238 U. S. 153, 167, 35 S. Ct. 811, 59 L. Ed. 1244; Ohio Utilities Co. v. Public Utilities Com., 267 U. S. 359, 363, 45 S. Ct. 259, 69 L. Ed. 656; Brunswick, etc., Water District v. Maine Water Co., 99 Me. 371, 59 A. 537; Pioneer T. & T. Co. v. Westenhaver, 29 Okl. 429, 118 P. 354, 38 L. R. A. (N. S.) 1209. The petitioner insists that in analogy with this rule and this practise the same allowance should be included under section 326 (c) of the Revenue Act of 1918 (40 Stat. 1092), as part of its "paid-in or earned surplus or undivided profits." More exactly it argues that the charge of the items against its capital account left unimpaired its "earned surplus," and that the Commissioner was wrong in disallowing them in his computation of its "invested capital." The practise of the Treasury has not been consistent, as appears from the letter of the Commissioner of June 27, 1924, but its last position is against the petitioner, and it is this which is before us. The Board of Tax Appeals has rendered several decisions to the same effect, which were not appealed, but, except for these, the question is res integra.

Whether money be borrowed, or be paid in for shares, it is equally true that a loss results during the period of construction for, which there is no corresponding revenue, the property not yet being productive. But that loss need not, and usually does not, stop then, because there is in many industries an initial season before goods can be produced or marketed when the property though constructed is not yet industrially productive, and interest for an added period might with equal propriety be credited to capital account after construction was completed. All such credits may be regarded as capital investment, and should be when it is desired to establish a balance between revenue after the properties begin to earn and current cost of operation. This is, however, no inherent reason why the costs of delay must be so treated, whether they arise through the actual payment of interest or the loss of earning power. It would be equally in accord with the facts to treat them as made up later out of subsequent revenue, and the most that could be involved is the question whether if so viewed the interest must not be compounded. The practise is a convenient one, but it is no more than a convention, and we can see no compelling reason why Congress must have intended to adopt it, if the fair implication of the language does not go so far.

The payment of interest in fact reduces surplus; it is there before, and is not there after. We must find a substitute for it in the property itself, and that in spite of the fact that to the extent of its actual cost it is not yet itself capital, since it is built from borrowed money. This results in a most artificial conception, one which is avoided in ordinary accounting, which credits borrowed money to capital account. We must say that, although the property acquired was not capital to the extent of its cost in labor and materials, nevertheless a part of it, represented by the interest paid, became capital as soon as the payments were made. If, however, the loan is later paid from capital and surplus, the property built by the borrowed money will also be a substitute for the sums then withdrawn, and the property comes to represent more than its original cost. It has gained a value dependent upon the delay which was essential to its construction. While there is no necessary anomaly in this, the loss in earning power of money used in construction, when that is not borrowed, but taken from funds derived from the sale of shares is a precise equivalent to that paid in interest upon borrowed funds. Every reason for allowing interest as part of cost applies equally to such a loss of earning power, and it is safe to assume that, if Congress intended one, it intended the other.

■ Yet it cannot possibly be supposed that loss of earning power during construction is an item which could be allowed under section 326; it is not money paid in for shares, nor is it earned surplus, the only two classes which could conceivably be thought to apply. Good accounting practise meets this difficulty, as we have said, by assimilating the two situations; but that we cannot do. We are forced either to establish an inequitable distinction between companies which borrow and those which do not, or to deny the claim altogether. Section 326 set up a method of computation of its own, varying somewhat in any case from the usual practise, as Congress was free to do, being engaged only in the levy of a tax which it might compute as it chose, within extremely indefinite limitations not apposite here. The situation is quite different therefore from fixing a rate base, as to which the constitutional limitations are narrower, and the rules applied in that situation have no necessary application here. So far, therefore, as there can be said to be any principles applicable at all, they do not support the petitioner's position.

■■ The nearest analogy is the computation under the income tax of gains from the sales of unproductive property. Here it has been argued that the "carrying charges" during the period when the property awaits exploitation should be credited to cost and so decrease the gain. This was, however, denied by the Supreme Court, not only when the item consisted of loss in earning power (Hays v. Gauley Mountain Coal Co., 247 U. S. 189, 38 S. Ct. 470, 62 L. Ed. 1061), but also when interest was actually paid (Walsh v. Brewster, 255 U. S. 536, 41 S. Ct. 392, 65 L. Ed. 762). We recently had the same question before us in the case of unimproved land held for appreciation (Fraser v. Commissioner of Internal Revenue (C. C. A.) 25 F.(2d) 653), where we said that while, as to a part of these charges, the present use value of the land might be a set-off, being an available income, nevertheless there remained a part which was paid or suffered with no corresponding present return. As to so much the eventual increase in value alone was a countercharge and yet, although it was customary to regard it as a credit upon cost, the statute did not allow it in computing gains. We cannot see what difference it makes whether the cost is computed for the purpose of the income tax or of "invested capital" under section 326. La Belle Iron Works v. U. S., 256 U. S. 377, 41 S. Ct. 528, 65 L. Ed. 998, has definitely settled it that under that section only the cost of the

property can enter into "invested capital." If so, what is not permissible as part of cost in computing gains under the income tax cannot be permissible here. The Commissioner, therefore, appears to us to have adopted the proper rule as to interest, and, if that was properly disallowed, there is no reason to treat the discount differently, quite independently of the fact that the petitioner's books were originally in accord with the Commissioner's interpretation.

Order affirmed.