**ALLIANCE INS. CO. OF PHILADELPHIA v. MacLAUGHLIN, Collector of Internal Revenue.**

**INSURANCE CO. OF PENNSYLVANIA v. SAME.**

**Nos. 15700, 15702.**

District Court, E. D. Pennsylvania.

March 10, 1931.

Edward M. Biddle and Robert T. McCracken, both of Philadelphia, Pa., for plaintiffs.

Paul Freeman, Asst. U. S. Atty., of Philadelphia, Pa., and E. H. Horton, Gen. Counsel, Internal Revenue Bureau, of Washington, D. C., for defendant.

KIRKPATRICK, District Judge.

In these two actions at law the plaintiffs are suing to recover income taxes paid by them for the calendar year 1928. The cases are before the court upon statutory demurrers which, under the Pennsylvania Practice Act (12 PS § 382 et seq.), admit all the facts pleaded, and the single issue in both cases is whether the assessment and collection of the taxes were legal.

The plaintiffs are stock fire insurance companies incorporated under the laws of Pennsylvania and conducting the usual business of fire insurance companies. The taxes were assessed under the Revenue Act of 1928 (26 USCA § 2001 et seq.), and were based upon gain accruing to the plaintiffs from the sale during the year 1928 of securities owned by them, and acquired prior to January 1, 1928.

The question involved is whether, in computing the amount of such gain, the basis to be used should be the fair market value of the property on March 1, 1913, or the cost if acquired after that date, and not the fair market value as of January 1, 1928, the effective date of the Revenue Act of 1928.

To see how the question arises it will first be necessary to review briefly the legislation bearing upon the question. The Revenue Act of 1913 and the subsequent Acts of 1916, 1917, and 1918 taxed all insurance companies in the same manner as corporations generally, and under these acts, gains derived from the sale or other disposition of property were taxable as income. The Revenue Act of 1921 (42 Stat. 227, 262, 263), however, established an entirely new scheme for the taxation of insurance companies, and, in sections 246 and 247, dealt specifically with insurance companies other than life and mutual. By the provisions of these sections such companies (which of course included stock fire insurance companies) were no longer subject to taxation upon gains from sales or other disposition of property, nor were they permitted to deduct losses sustained in like manner. The Revenue Acts of 1924 and

1926 re-enacted substantially the provisions of sections 246 and 247 of the Act of 1921. Thus from January 1, 1921, until January 1, 1928, stock fire insurance companies were not subject to a tax upon gains derived from the sale of their property.

The attention of Congress was directed to this somewhat mysterious omission and the inequality which it produced between stock fire, casualty, and marine insurance companies on the one hand and mutuals on the other. As a result, in the Revenue Act of 1928 a clause taxing gains derived from the sale of property was added to the existing provisions for taxing insurance companies other than life or mutual, and the following provision of the Revenue Act of 1928 was enacted as part of section 204 (26 USCA § 2204):

"(a) *Imposition of tax.* In lieu of the tax imposed by section 2013 of this title, there shall be levied, collected, and paid for each taxable year upon the net income of every insurance company (other than a life or mutual insurance company) a tax as follows:

"(1) In the case of such a domestic insurance company 12 per centum of its net income. * * *

"(b) *Definition of Income, Etc.* In the case of an insurance company subject to the tax imposed by this section—

"(1) *Gross Income.* 'Gross income' means the sum of (A) the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners, and (B) gain during the taxable year from the sale or other disposition of property. * * *"

The Revenue Act of 1928 deals with insurance companies, including those here involved, in supplement C. The general provisions of the act appear in subtitle A, subtitle B, and in supplements A, B, C, and D of subtitle C. Section 4 of subtitle A (26 USCA § 2004) is as follows: "The application of the General Provisions and of Supplements A to D, inclusive, to each of the following special classes of taxpayers, shall be subject to the exceptions and additional provisions found in the Supplement applicable to such class. * * *"

Section 113 (a) and (b) of the act appearing in supplement B (26 USCA § 2113 (a, b) is as follows:

"(a) Property Acquired After February 28, 1913. The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property * * * [with certain exceptions which are not here pertinent].

"(b) Property Acquired Before March 1, 1913. The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be:

"(1) The cost of such property (or, in the case of such property as is described in subsection (a) (1), (4), (5), or (12) of this section, the basis as therein provided), or .

"(2) The fair market value of such property as of March 1, 1913, whichever is greater. * * *"

The government's contention is simply that, since there are no exceptions or additional provisions in section 204 (26 USCA § 2204), or, for that matter, anywhere in supplement G, affecting the basis for determining gain or loss of stock fire, casualty, or marine insurance companies, section 113 was intended to apply and to furnish the basis. It is further argued that only by so holding can stock insurance companies of the classes referred to be placed upon a parity with mutuals, since the latter, in case of property sold during 1928, must compute the gain on the basis of its 1913 value.

But the statute (title 1 of the act [26 USCA §§ 2001 to 2322]) is an income tax law. The predominant intention running through all provisions is to tax income only. The Sixteenth Amendment is a grant of power to lay taxes upon incomes, and the presumption is that Congress intended to act within its constitutional limits. Whatever may be read into the act by implication must yield to a construction which will uphold the act, unless a contrary intention is so clearly indicated as to make any other interpretation impossible with reason. This is the basis of the plaintiffs' position, for they say that the construction contended for by the government would result in imposing a tax upon something not income at all, but an accrual to capital matured before the passage of the act.

A review of decisions under the Corporation Excise Tax Act of 1909 (Act Aug. 5, 1909, c. 6, 36 Stat. 112, § 38) sustains the plaintiffs' view. These decisions in principle apply to the instant case, because the word "income" has the same meaning in the Income Tax Act that it had in the Corporation

Excise Tax Act of 1909. Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305.

In Doyle v. Mitchell Bros. Co., 247 U. S. 179, 38 S. Ct. 467, 468, 62 L. Ed. 1054, it was decided that an increase in value of corporate assets, the whole amount of which had accrued prior to January 1, 1909, the effective date of the act, was not taxable, although converted into money during the year 1909 at a price in excess of its value when acquired (which happened to be in 1903). The court said:

"An examination of these and other provisions of the act makes it plain that the legislative purpose was not to tax property as such, or the mere conversion of property, but to tax the conduct of the business of corporations organized for profit by a measure based upon the gainful returns from their business operations and property from the time the act took effect. * * *

"The formula that the entire receipts derived from a conversion of capital assets after deducting cost value must be treated as net income, so far as it is applied to a conversion of assets acquired before the act took effect and so as to tax as income any increased value that accrued before that date, finds no support in either the letter or the spirit of the act, and brings the former into incongruity with the latter. * * *

"In order to determine whether there has been gain or loss, and the amount of the gain if any, we must withdraw from the gross proceeds an amount sufficient to restore the capital value that existed at the commencement of the period under consideration.

"This has been recognized from the beginning by the administrative officers of the government."

In Hays v. Gauley Mountain Coal Co., 247 U. S. 189, 38 S. Ct. 470, 472, 62 L. Ed. 1061, the question was as to the basis for determining income under the act of 1909 in case of securities of another company purchased in 1902 and sold in 1911 at a large profit. It was held that so much, and only so much of the increase in value of the shares as could be deemed to have accrued after December 31, 1908, was part of the company's gross income within the meaning of the act. In the opinion, the court said: " * * * The general purpose of the act of 1909 to measure the tax by the increase arising from corporate activities together with the income from invested property leads to the inference that that portion of the gross proceeds which represents gain or increase acquired after the taking effect of the act must be regarded as 'gross income'; and to this end it must be distinguished from that portion which represents a return of the capital value existing before. In order to do this, it is necessary to ascertain what was the value of the capital assets on December 31, 1908."

These decisions rule the instant case unless they have been subsequently overruled or modified. The government contends that the case of Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305, taken in connection with the case of Smietanka v. First Trust & Savings Bank, 257 U. S. 602, 42 S. Ct. 223, 66 L. Ed. 391, has just such effect, because (the government says) these two decisions deal with a situation exactly parallel to that involved in the instant cases, though the subject-matter was a different tax—income tax payable by trustees.

The second case (Smietanka v. First Trust & Savings Bank, supra), which was decided under the Income Tax Act of 1913 (38 Stat. 114), and therefore should be read first, holds merely that the Income Tax Act of 1913 made no provision for taxing income held and accumulated by a trustee for unborn or unascertained beneficiaries. The first case (Merchants' Loan & Trust Co. v. Smietanka, supra) arose under the later Acts of 1916 and 1917 (39 Stat. 756 and 40 Stat. 300). The question involved was the legality of a tax upon gain realized by a trustee who, on February 2, 1917, sold assets acquired prior to March 1, 1913. The trust arose under the will of a decedent who died in 1912 leaving a widow and four children, the provision of the will being that the income was to be paid to the widow during her life and after her death to be used for the benefit of the children or their representatives until each should arrive at the age of twenty-five when each should receive his or her share of the trust fund. The widow and the four children were all living in 1917. Thus it will be seen that all the beneficiaries were and at all times had been in esse and ascertained. The Supreme Court sustained an assessment based upon the difference between the amount realized in 1917 and the March 1, 1913, value.

Although the court in the opinion referred to the fact that the act of 1916 specifically levied a tax upon income accumulated in trust for the benefit of unborn or unascertained persons, this provision was mentioned only as showing the intention of Congress

to treat the trustee as a "taxable person." That was the real point in the case, because the tax in its entirety had been assessed against and paid by the trustee and not by the beneficiaries, either life tenant or remaindermen. As applicable to a trust in which the beneficiaries were in esse and ascertained, the two decisions establish no more than this: Prior to the acts of 1916 and 1917 no tax upon gains realized from sale of property and remaining undistributed in the hands of the trustee could have been assessed against the trustee. After the acts referred to, the trustee was a taxable person and liable for the tax.

The decision in Merchants' Loan & Trust Co. v. Smietanka does not touch the question whether, if the tax had been assessed against the beneficiaries, it could have been sustained without resort to the acts of 1916 and 1917, or, to put it in another way, whether, if the sale had occurred prior to 1916, the beneficiaries could have been taxed under the act of 1913. This seems to me to be the crux of the whole question here, because, if gain realized in the sale of securities by a trustee had at all times since the act of 1913 been taxable against the beneficiaries, then the effect of the acts of 1916 and 1917 was simply to transfer the incidence of the tax to the trustee. This was really not levying a new tax, and therefore it would follow that the decision would have no bearing upon the instant case, for there is no dispute that the Revenue Act of 1928 levied an entirely new tax.

Now it seems clear enough to me that the tax involved in Merchants' Loan & Trust Co. v. Smietanka could, prior to the acts of 1916 and 1917, have been assessed, partly at least, against the beneficiaries. The Act of 1913 (38 Stat. 168, § 2D) provided specifically that " * * * trustees * * * shall make and render a return of the net income of the person for whom they act, * * * " and that trustees should deduct the normal tax on the income and pay it to the United States, the surtax to be paid by the beneficiaries. The reason the trust estate in the case of Smietanka v. First Trust & Savings Bank escaped taxation was that there was no person in existence for whom the trustee acted. In the other case (Merchants' Loan & Trust Co. v. Smietanka) the persons for whom the trustee acted were in existence and were undoubtedly taxable. The fact that the income was not distributed need not have caused any difficulty, since it would have been simple enough to apportion the gain among the beneficiaries so that they could be assessed with the surtax.

It is evident that the Supreme Court never intended nor understood the decision in Merchants' Loan & Trust Co. v. Smietanka, to rule that an increase in value accruing prior to the effective date of the act imposing the tax should be included in the taxable gain. Thus in Goodrich v. Edwards, 255 U. S. 527, 41 S. Ct. 390, 391, 65 L. Ed. 758, a tax was assessed upon gain measured by an increase over the market value as of March 1, 1913 (the effective date of the act under which the tax was assessed), though the property had been purchased several years earlier at a much lower figure. The court said: "It is plain that this assessment was on the profit accruing after March 1, 1913, the effective date of the act. * * * The question involved is ruled by No. 608, supra [Merchants' Loan & Trust Company v. Smietanka], and the amount was properly taxed."

Of course, if it appeared clearly and unequivocally from the terms of the act of 1928 that Congress intended to apply the measure for gains, provided for by section 113 (26 USCA § 2113), to insurance companies of the plaintiff's class, the question of constitutionality would have to be met. But there are many things in the language and structure of the act of 1928 which strongly suggest that Congress did not so intend, and I cannot agree that the conclusion that section 113 was intended to apply to the tax imposed by section 204 (b) (1) (B), 26 USCA § 2204 (b) (1) (B), is necessary, or even permissible. The tax imposed by section 204 is expressly stated to be "in lieu of the tax imposed by section 2013 of this title." Section 13 (26 USCA § 2013) imposed a 12 per cent. tax on the net income of corporations generally, which is the amount imposed by section 204, and the effect of the phrase quoted above is to emphasize the intention to make section 204 a scheme or code of taxation, complete in itself, applicable to insurance companies other than life or mutual without reference to the general provisions of the act. No other reason can be suggested for providing that a tax of 12 per cent. should be "in lieu of" a tax at the same rate already fixed for corporations generally.

This intention appears more clearly when section 204 (26 USCA § 2204) is examined in all its parts. Whenever it was intended to incorporate into section 204 any of the general provisions of the act, such provisions were specifically referred to and included by express language.

For the reasons stated, I hold that the basis for determining gain upon which the assessment was made in the case of Alliance Insurance Company of Philadelphia v. Joseph S. MacLaughlin, Collector of Internal Revenue for the First District of Pennsylvania, is not authorized by law. The affidavit of defense is therefore held to be insufficient, and judgment may be entered for the plaintiff in that case in the amount claimed, with interest.

█ It is my opinion that the said clauses of the Revenue Act of 1928 when construed in keeping with the foregoing opinion are constitutional. For this reason I hold that the affidavit of defense in the case of The Insurance Company of the State of Pennsylvania v. Joseph S. MacLaughlin, Collector of Internal Revenue for the First District of Pennsylvania, is sufficient, and judgment may be entered therein for the defendant.