15456

GEORGIA CYPRESS COMPANY v. SOUTH CAROLINA
TAX COMMISSION

(22 S. E. (2d), 419)

*Attorney General John M. Daniel, Assistant Attorney General T. C. Callison,* and *Mr. Claude K. Wingate,* of Columbia, Counsel for Appellant Tax Commission,

*Messrs. Woods & Woods,* of Marion, were counsel for respondent.

October 26, 1942.

The opinion of the Court was delivered by CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE.

In September, 1923, the plaintiff-respondent, Georgia Cypress Company, acquired title to a tract of 16,625 acres of timbered land, which had originally belonged to Okeetee Club, in the Savannah River swamp in Jasper County. It paid $25,000.00 to one who held an option on the property, and the sum of $200,000.00 to Okeetee Club. It also paid $8,173.88 at the time of the purchase as expense for cruising the timber.

After holding the land for several years the company, in 1930, entered into an agreement with W. M. Ritter Lumber Company, whereby the latter undertook to cut the timber and to pay for it on a stumpage basis. The cutting was begun in 1931.

For each of the years 1931, 1932, and 1933, the plaintiff filed its income tax returns with the South Carolina Tax Commission, the defendant and appellant here. On August 2, 1934, the commission notified the plaintiff that an additional income tax for the three years was due, in the sum of $277.08, including some interest. Plaintiff thereupon paid the amount under protest, and brought this action in the Court of Common Pleas for Marion County to recover it.

By consent the case was referred to Hon. D. B. Mc-Intyre, the Probate Judge and acting Master of Marion County, who in due time filed his report, holding that the additional tax had been improperly required by the commission, and recommending that the plaintiff have judgment in the sum of $277.08.

Upon exceptions the cause was heard by his Honor, Judge T. S. Sease. He filed an order on March 27, 1942, confirming the report of the Master and granting judgment for plaintiff in the amount claimed.

The real point in the case involves the determination of the amount of depletion of plaintiff's timber which it is entitled to deduct in reporting income from sales of the timber, so as to arrive at the amount of gain which is taxable.

This requires a construction of the Act of 1927, Section 2449, subdivision 8, of the Code, which is as follows: "In computing net income there shall be allowed as deductions * * * a reasonable allowance for the depreciation and obsolescence of property used in the trade or business; and in the case of mines, other natural deposits, and timber, a reasonable allowance for depletion: Provided, That in computing the deductions allowed under this paragraph, the basis shall be the cost plus any additions and improvements (including in the case of mines, and other natural deposits, the cost of development not otherwise deducted). In the case of leases the deductions allowed may be equitably apportioned between the lessor and the lessee."

The words of especial importance are "cost plus any additions and improvements."

The parties agree that the land, without the timber, was worth $16,625.00, and that the amount of the timber, on August 6, 1931, was 90,000,000 feet.

The Master and the Circuit Judge held that the following items made up the "cost and additions" of the timber:

Cost of Graham option .....................$ 25,000.00
Payment to Okeetee Club without interest..... 200,000.00
Initial cruising expense .................... 8,173.88

Interest paid to Okeetee Club .............. 48,975.00
Charter fees, stamps, and franchise and corpo-
    ration license taxes .................... 652.50
Real estate taxes ......................... 15,993.27
Premium on bond executed to Okeetee Club in
    lieu of mortgage on mill site and mill ...... 750.00
Legal expense, examination of titles, etc. ..... 321.26
Miscellaneous expense .................... 128.52

Total cost of land and timber to August 6,
    1931 ................................$299,994.43
Less amount allocated to land ............. 16,625.00

Total cost of timber ....................$283,369.43

The tax commission contends that there was error in including many of these items, and that there should have been allowed only the following:

Cost of property to corporation .............$225,000.00
Cruising for timber ...................... 8,173.88

Total cost .............................$233,173.88
Less value of land 16,625 acres at $1.00 per acre 16,625.00

Cost of timber ..........................$216,548.88

These were the figures used by the commission as a basis for requiring the payment of the additional taxes.

The question, then, is should the items of interest paid to Okeetee Club, the cost of incorporating the company, the real estate taxes, the premium on the bond, and the legal and other expenses of investigation of titles, be allowed as a part of the "cost and additions" of the property?

The principal item is that of interest paid. Okeetee Club conveyed the property to J. L. Wheeler and others, who agreed to pay $25,000.00 in cash upon delivery of the instrument, and the further sum of $175,000.00, in seven equal annual payments of $25,000.00 each, with interest on

the deferred payments at the rate of six per cent. per annum, payable semi-annually. The original instrument is on file with the record, and it further provides that "the second party shall have the right to anticipate the payment of the whole debt, or any part thereof, on any semi-annual anniversary of these presents." Mr. Wheeler and others thereafter conveyed the property to the plaintiff, subject to the terms of the conveyance by Okeetee Club, and the assumption by Georgia Cypress Company of such obligations.

We think that the interest paid by the plaintiff to Okeetee Club is a carrying charge, and may not properly be added to the cost of the property, as that word is used in the statute. Nor is it an "addition." Clearly, if the plaintiff had paid the entire $200,000.00 in cash from its own funds, it could not add interest on its investment as a part of the cost. There would be no difference if plaintiff had borrowed the amount from others. A contrary holding would place a speculator operating on credit in a more favorable position than one who invests his own funds. The source from which the money was obtained is immaterial. Here the company did not make a new loan, but assumed an indebtedness already upon the property, yet, as we have seen, it had the right to anticipate the payments and save the interest charges. The result was substantially the same as if it had made a new loan.

In construing the word "cost" as employed in the Statute, this Court has said: "It distinctly provides that the basis of taxation and allowances for depreciation shall be the cost (not the value) of the property and additions. Now in the nature of things the cost of the property is the price paid for it at the time of its acquisition and the cost of any improvements and betterments at the time they were made." *Read Phosphate Company v. South Carolina Tax Commission,* 169 S. C., 314, 168 S. E., 722, 727.

The Supreme Court of the United States has declared: "That the sale resulted in a gain or profit to the extent of

$210,000, the difference between the buying and selling prices, is not to be doubted, for there is no merit in the contention that interest should be added to the purchase price in order to ascertain its cost. The money that went into the purchase was not loaned at interest; on the contrary, by the very fact of the purchase it was placed where it could not earn interest for the respondent in the ordinary sense, and the gain represented by the increase of selling price over cost price must be regarded as a substitute for whatever return some other form of investment might have yielded." *Hays v. Gauley Mountain Coal Company*, 247 U. S., 189, 38 S. Ct., 470, 472, 62 L. Ed., 1061.

In a case decided by the Circuit Court of Appeals for the Second Circuit, it was stated: "Certainly it can make no difference how the owner procures the purchase price, whether from funds in hand, or on his bare credit, or on security, or with the help of sureties. *Hays v. Gauley Mountain Coal Company*, 247 U. S. 189, 38 S. Ct. 470, 62 L. Ed. 1061, decided that interest upon the amount invested was not part of the cost, and the principle there settled seems to us to involve interest on borrowed money as well." *Fraser v. Commissioner of Internal Revenue*, 2 Cir., 25 F. (2d), 653, 655.

See, also, *Westerfield v. Rafferty, Collector, D. C.*, 4 F. (2d), 590.

In our judgment, the expense of incorporating, and the premium on the bond executed to Okeetee Club are administrative expenses, rather than parts of the cost of the property, or additions. Under its charter the company can acquire and sell property other than this. The bond was given, in lieu of a real estate mortgage, by an arrangement made some time after the land had been purchased. It was not mentioned in the deed.

The amount paid by the company as taxes on the property does not become a part of the cost, within the meaning of the Statute, but is an expense incident to ownership, accruing from year to year.

We think that the Circuit Judge was in error in holding that these items should be added to the cost of the property, or that they amount to "additions."

It should be noted that the interest, taxes, and other expenses were proper deductions from any income which the respondent had during the year in which such payments were made, Code, Section 2449, but this would not entitle the company to accumulate these items over a period of years and add them to the cost of the property.

The Circuit Judge, in our opinion, properly allowed as a part of the cost the items of $321.26 and $128-.52, for legal and other expense in connection with investigating and perfecting the title. This was not a carrying charge. Certainly, it is as much a part of the cost as the expense for cruising, to which the commission made no objection. This expense was incurred at the time of the purchase, and entered directly into the initial cost to the plaintiff. These items aggregate the sum of $499.78.

Although this is a small amount when compared with $216,548.88, yet the addition of $449.78 to the cost of the timber will, upon being reflected in the calculation of the net profits of the company for the years in question, probably result in entitling the plaintiff to a very few dollars refund from the amount of additional taxes which it paid under protest. For that small amount it should be given judgment.

Though this is a law case, if such correct amount definitely and satisfactorily appeared in the record, no doubt the Court could order a new trial unless the plaintiff remitted a part of the recovery. *Crosby v. Metropolitan Life Insurance Company,* 167 S. C., 255, 166 S. E., 266.

However, the record before us is insufficient to show clearly and with certainty what judgment should have been rendered by the Circuit Court. To determine it a complicated readjustment of the tax returns will be necessary.

Accordingly, the judgment of the Circuit Court for $277-.08 is reversed, and the cause is remanded to that Court for its determination, in accordance with the views herein announced, of the amount of judgment to which the plaintiff may be entitled by reason of the allowance of the $449-.78 as a part of the cost of the timber.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES concur.